UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Carnell Cobb,                               Court File No.: 13-cv-2934 (MJD/TNL)

    Petitioner,

v.
                                            **REPORT & RECOMMENDATION**

State of Minnesota,

    Respondent.

---

    Carnell Cobb, OID 181781, MCF-Faribault, 1101 Linden Lane, Faribault, MN 55021, *pro se* Petitioner.

    Tara C. Ferguson Lopez, Mille Lacs County Attorney's Office, 225 6th Avenue SE, Milaca, MN 55653, for Respondent.

This matter is before the Court, Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1). This action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Michael J. Davis, United States Chief District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court will recommend that the Petition be denied.

### I.   BACKGROUND

Petitioner was charged with six counts of criminal sexual conduct in Mille Lacs County District Court. The following facts are set forth in the opinion of the Minnesota

Court of Appeals:

> In June 2006, Cobb met the victim's mother and moved into the apartment she shared with H.G., her then-eight-year-old son. Cobb, H.G., and H.G.'s mother lived together for only a few months. Four years later, in July 2010, H.G. first reported that Cobb sexually assaulted him during that summer of 2006 when they lived together. After further investigation into H.G.'s allegations, the state charged Cobb with six counts of criminal sexual conduct. Following a jury trial, Cobb was convicted of all six offenses.
>
> During the investigation into H.G.'s allegations against Cobb, social worker Aaron Strong conducted a recorded CornerHouse-style forensic interview of H.G. During the interview, H.G. described in detail how he had been sexually abused, accused Cobb of the assaults, and commented that he had once walked in on Cobb and his mother watching a video with "naked people in [it]." H.G. clarified that Cobb never made H.G. watch the videos. The video of the CornerHouse-style interview was admitted into evidence and played for the jury at trial, and a transcript of the interview was provided to the jury as well.
>
> At trial, H.G. testified that, during the summer of 2006, Cobb and H.G.'s mother would usually "hang out" inside the apartment during the day while H.G. would "hang out" around town with his friends. H.G. recalled being alone with Cobb approximately 20-30 times that summer. H.G. explained that his mother experienced health issues that summer, had regular medical appointments every other week, and was in the emergency room about once a week. Once or twice a month, H.G.'s mother spent the night at the hospital. H.G. testified that, when his mother was at the hospital, he stayed at the apartment with Cobb or went downstairs to his friend's apartment.
>
> H.G. also testified that, two or three weeks after Cobb moved in, Cobb began "forc[ing]" H.G. to "have sex with him." H.G. said that the sexual assaults occurred approximately ten times. H.G. explained that he did not tell anyone that summer what Cobb was doing because he "did not want [Cobb] to kill [him]" and H.G. was afraid his mother would not believe him.

2

In July 2010, H.G. told his girlfriend that he had been raped several years earlier. This disclosure was the first time H.G. told anyone about the sexual assaults. After his conversation with his girlfriend, H.G. told his mother that Cobb had raped him and that H.G. wanted Cobb to be in prison.

H.G.'s mother testified that she experienced numerous health issues and attended frequent medical appointments throughout the summer of 2006. She testified that she never noticed any inappropriate behavior, sexual or otherwise, between Cobb and H.G., and that she never had any "motherly feelings" that something was not right. H.G.'s mother did recall that, shortly after Cobb first moved in, he and H.G. went from having a friendly, "buddy buddy" relationship to H.G. not wanting to be around Cobb. She testified that H.G. "absolutely hated [Cobb]." During direct examination, the prosecutor asked her, "To your knowledge, did the defendant have pornography in the house?" Before H.G.'s mother answered, defense counsel objected and the district court sustained the objection.

Jessica Vittum, a child-protection investigator with Mille Lacs County, provided testimony regarding how and why delayed disclosure of sexual abuse can occur. She explained that delayed disclosure is the most common reaction by children to sexual abuse because they are afraid that they are not going to be believed or that someone they care about will be hurt as a result of reporting the abuse.

Brad Barnes, the investigator with the county sheriff's department assigned to H.G.'s case, also testified at trial. Barnes interviewed Cobb twice during his investigation. In the first interview, Cobb wondered why H.G. and his mother would wait so long to bring up these allegations. Cobb denied that he had inappropriate relations with H.G. and denied that he and H.G. had ever been alone together in the apartment.

Barnes obtained records from two area hospitals covering the relevant time period of June 1 to September 2, 2006. He testified that although he did not receive records from every hospital and clinic in the area, the records he did receive showed that H.G.'s mother had not stayed overnight in those

3

> hospitals during that time. Barnes explained that he did not collect any physical evidence during his investigation because H.G. and his mother no longer lived in the apartment where the incidents occurred.
>
> Cobb testified in his own defense. He did not remember H.G.'s mother staying overnight at a hospital during the time he lived with her, but he did remember that she once stayed overnight at a sleep clinic. Cobb claimed that the night H.G.'s mother was gone, H.G. stayed with his grandmother and that Cobb was never alone with H.G.
>
> On cross-examination, the prosecutor asked Cobb whether a certain neighbor and friend ever saw him and H.G. home alone together. Defense counsel objected, asserting that the question stated facts not in evidence. The judge directed the prosecutor to rephrase the question, and the prosecutor then asked Cobb "are you disagreeing with the fact that [this neighbor] saw times when you were home alone with [H.G.]?" The defense again objected, the judge overruled the objection, and Cobb responded, "I would be outside. [H.G.] would be outside. We wouldn't be in the house. [H.G.] would go play with his friends or whatever." When asked whether he was ever alone with H.G. in the apartment, Cobb responded that there were times where he would be watching television and H.G. would "come in and run right back out."
>
> Steven Voshell, principal of the local elementary school, testified that he interacted with H.G. approximately 15-20 times when H.G. attended the school. He stated that, in his opinion and based on his professional knowledge, H.G. had a reputation with some people around the school for untruthfulness and that, as a result, he questioned the credibility of H.G.'s testimony.

*State v. Cobb*, No. A12-0362, 2013 WL 656462 at *1-3 (Minn. Ct. App. Feb. 25, 2013).

A jury found Petitioner guilty on all six charged counts of criminal sexual conduct. *Id.* at *3. On February 25, 2013, the Court of Appeals affirmed his conviction of one count and reversed the remaining convictions for being lesser-included offenses, and the

4

Minnesota Supreme Court denied review on May 29, 2013. *Id.* at *5.

Petitioner brought the instant petition challenging his state court conviction of first-degree criminal sexual conduct based on a significant relationship and multiple acts of penetration over an extended time. He argues (1) the prosecutor's assertion of a fact not in evidence was a violation of his Sixth Amendment Confrontation Clause rights incorporated via the Fourteenth Amendment; (2) the admission of a testimonial statement without an opportunity to cross-examine the alleged witness violated his Fifth, Sixth, and Fourteenth Amendment rights; and (3) prosecutorial misconduct tainted the jury's perspective and denied Petitioner a fair trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights.

Respondent filed a memorandum in opposition to the petition on November 8, 2013, briefly setting forth facts and arguments supporting summary dismissal of the petition. (ECF No. 5.) On November 12, 2013, this Court ordered Respondent to file an answer to the petition within 30 days addressing the petition's merits. (ECF No. 6.) Respondent filed no such answer, and on January 14, 2014, this Court again ordered Respondent to "file an answer to the Petition on or before **January 31, 2014**, that certifies the true cause of Petitioner's confinement and shows cause why the writ should not be granted." (ECF No. 9 at 1 (emphasis in original).) Respondent again failed to answer. On March 24, 2014, Petitioner moved for default judgment.[1] (ECF No. 12.)

---

[1] Petitioner's filing is captioned "Affidavit of Facts and Order To Show Cause." (ECF No. 12.) After careful review of this filing, however, and in light of the leeway courts give pro se parties, *e.g. Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993), the Court will view this filing as a motion for default judgment based on the record before the Court.

## II.   ANALYSIS

### A. Standard of Review

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [ ] the traditional function of the writ is to secure release from illegal custody." *Preise v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated in state court, an application for a writ of habeas corpus can only be granted where the state court's decision on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Linehan v. Milchark*, 315 F.3d 920, 924 (8th Cir. 2003) (applying § 2254 to petition by civilly committed sexually dangerous person).

A state court decision is "contrary to" Supreme Court precedent f it "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it unreasonably applies the correct legal principle to the facts of the prisoner's case. *Id.* at 413. "A federal

court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Leubbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

A federal court will not entertain a petition for writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." To satisfy this exhaustion requirement, the petitioner must fairly present the federal nature of his claim to each level of the state courts. *O'Sullivan*, 526 U.S. at 845. A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997).

When a petitioner has failed to present federal constitutional claims fairly in state court, the federal court must determine whether the state procedural rules would allow a hearing on the unexhausted claim in a state court proceeding. *McCall*, 114 F.3d at 757. If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief for that claim unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758. A claim that is procedurally defaulted under state law is

7

barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

Under Minnesota law, it is firmly established that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Two exceptions to the *Knaffla* rule exist: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal; or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006).

### B. Prosecutor's Question Containing Inadmissible Hearsay Is Harmless Error

Petitioner's claims—admission of inadmissible hearsay and prosecutorial misconduct depriving Petitioner of a fair trial—are all different names for the same thing. He asserts that the prosecutor erred by asking whether a neighbor had seen Petitioner and H.G. alone because the question stated facts not in evidence, and that such error was prosecutorial misconduct in violation of Petitioner's constitutional rights. The Court construes these claims as asserting that the prosecutor's question, which contained inadmissible hearsay and thereby deprived him of his Sixth Amendment right to confront witnesses against him, was not harmless error.

When determining whether error at trial was harmless in a habeas corpus case, courts "use the strict standard set out in *Chapman v. California*, 386 U.S. 18 (1967)

(harmless beyond a reasonable doubt) in cases where the state court has not applied the Chapman analysis in the first instance." *Barrett v. Acevedo*, 169 F.3d 1155, 1164 (8th Cir. 1999). Under the *Chapman* analysis, courts

> must consider a host of factors, including: (1) the importance of the witness's testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradicting testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*Id.* (citing *Orndorff v. Lockhart*, 998 F.2d 1426, 1431 (8th Cir. 1993)).

The Minnesota Court of Appeals, relying on *State v. Mayhorn*, 720 N.W.2d 776, 788-89 (Minn. 2006), determined that the prosecutor's question at Cobb's trial was improper and likely misconduct. *Cobb*, 2013 WL 656462 at *4. The Court of Appeals further determined, however, that this misconduct "was harmless because the guilty verdict was 'surely unattributable to the error.'" *Id.* (quoting *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003)). The Court of Appeals supported its determination as follows:

> First, in response to the question, Cobb never affirmed or denied that the neighbor had seen him and H.G. alone. Cobb's response to the prosecutor's question was that "I would be outside. [H.G.] would be outside. We wouldn't be in the house." Second, Cobb admitted later during his testimony that there *were* times, albeit brief, when he and H.G. were alone together in the house. Third, H.G. and his mother both testified that H.G. and Cobb were alone together when H.G.'s mother was gone because of medical issues. Given the totality of evidence showing that Cobb had opportunities to be alone with H.G., the prosecutor's single question about the neighbor was harmless beyond a reasonable doubt.

*Cobb*, 2013 WL 656462 at *4.

The Court agrees with the Court of appeals that any error on the part of the

9

prosecutor was harmless. First, the hearsay contained in the prosecutor's question was not important to the prosecution's case. Second, the prosecution did not repeat the hearsay after the offending question. Third, even if the presumed-erroneous question had not been asked, the record would still contain (1) Petitioner's admission that there were brief times that he was alone in the house with H.G., and (2) both Petitioner's and H.G.'s mother's testimony that H.G. and Petitioner were occasionally alone together when H.G.'s mother was gone for medical reasons.

Finally, the overall strength of the Prosecution's case was sufficient for a reasonable juror to find Petitioner guilty without considering the content of the Prosecutor's question. H.G. testified that the sexual assaults occurred about ten times and that he didn't tell his mother at the time because he was concerned Petitioner would kill him, and H.G. thought his mother would not believe him. H.G.'s mother testified that she never noticed any inappropriate behavior between Petitioner and H.G., but she had health issues that required her to attend frequent medical appointments throughout the summer of 2006. Also, H.G.'s mother recalled that Petitioner's relationship with H.G. soured shortly after Petitioner moved in, quickly changing from a buddy-buddy relationship to H.G. not wanting to be around Petitioner. Jessica Vittum, a child-protection investigator, provided testimony regarding delayed disclosure of sexual abuse, and Brad Barnes, an investigator with the county sheriff's office, testified regarding his two interviews with Petitioner. In light of the foregoing, a reasonable juror could find Petitioner guilty of the crime charged without considering the contents of the prosecutor's question. Accordingly, the Court determines that the prosecutor's question containing inadmissible

hearsay was harmless error, and therefore, Petitioner's hearsay and prosecutorial misconduct claims must fail.

To the extent that Petitioner's assertion that the jury's perspective was tainted by prosecutorial misconduct amounts to a separate claim, this claim is procedurally defaulted. At the time Petitioner filed his direct appeal, he knew the facts underlying the prosecutor's conduct at trial, but failed to argue that it tainted the jury's perspective of him to the point of denying him a fair trial. *See Cobb*, 2013 WL 656462. Petitioner has made no showing that the facts underlying this claim were unknown to him at the time of his appeal in state court. Thus, under *Knaffla*, Petitioner is barred from raising this claim in state court. 243 N.W.2d at 741. Neither exception to the *Knaffla* rule applies— Petitioner's claim of jury tainting is not novel, and fairness does not require this Court to review it. Because Petitioner has failed to show (1) cause and prejudice for the default or (2) that a fundamental miscarriage of justice would result if the Court does not consider it, his claim of jury tainting is procedurally defaulted.

### III.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Motion for Writ of Mandamus re:

Default Judgment (ECF No. 7) be **DENIED,** the Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**, and this action be **DISMISSED WITH PREJUDICE.**

Date:  July 23, 2014  s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Cobb v. State of Minnesota*
File No. 13-cv-2934 (MJD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court by **August 24, 2014**.